THE LEAVENWORTH, TOPEKA & SOUTHWESTERN RAIL-
WAY COMPANY v. SAMUEL PAUL.—SAME v. E. J.
HOLMAN.

1. RAILROAD RIGHT OF WAY; *Testimony as to Value of Real Estate.* Upon
the trial of an appeal from the award by commissioners of damages caused
by the appropriation of the right of way through a farm for railroad
purposes, ten witnesses were called, who testified that they knew the
value of the farm before and after the appropriation, and gave such
values. Thereafter two witnesses were called, who testified that they
knew the farm, its situation, condition, improvements, the way in which
the railroad track ran through the farm, and that it was an injury to the
farm. They also stated that they did not know the market value. They
were then asked "to state if they knew the per cent. difference, if any
there was, in the value of the farm before the taking and after the right
of way was taken." This question was objected to, but the objection was
overruled, and the witnesses testified as to the per cent. difference. None
of the ten witnesses who had testified as to absolute values disclosed in
their testimony a less per cent. of difference than did these two wit-
nesses; and after all the testimony was received, the jury were sent out
under the direction of the court, and made a personal examination of the
farm; and their verdict was less than two-thirds of the smallest differ-
ence in values before and after the appropriation was disclosed by any
of the plaintiff's witnesses. *Held,* Under the circumstances, that the
admission of the testimony of these two witnesses, if error it be, was not
sufficient to justify a reversal of the judgment rendered in favor of the
land-owner.

2. Two INSTRUCTIONS, *Presumed Not to Have Injured Either Party.* Where
the question in dispute is as to the damages caused by the appropriation
of a right of way, and the plaintiff's witnesses (twelve in number) sub-
stantially agree as to amount, and the defendant's witnesses (five in
number) also substantially agree, but name a much smaller amount than
the plaintiff's witnesses, and the jury return a verdict intermediate the
two amounts, *held,* that an instruction to the effect "that where a con-
siderable number of witnesses, apparently intelligent and reliable, sub-
stantially agree in estimating the value of or injury to a particular
thing, that is a circumstance proper for the consideration of the jury,"
is not erroneous as an abstract proposition; and when coupled with the
further instruction that "the jury were not bound by the testimony of
any one witness or any number of witnesses, but must come to their
own conclusions from all the evidence in the case," cannot be presumed
to have worked any injury to the rights of either party.

3. ——— Where a jury, in answer to a special question, say that they
allow no damages because of a certain matter referred to in the testi-

mony, *held*, that a refusal of the court to instruct them to disregard such matter in estimating the damages, furnishes no ground for complaint.

4. FENCE, *Cost of, to be Considered, When.* Wherever it is reasonable and proper that the land-owner construct and maintain a fence along the right of way, then the cost thereof is a proper item to be considered by the jury in estimating the damages.

5. INSTRUCTION, *Refusal of, Not Error.* Where there is no testimony before the jury as to the actual extent to which the railroad company will use the land appropriated, and the court instructs the jury in general terms that the fee-simple title remains in the plaintiff, subject to the use by the company for the purposes of its road, *held*, that a refusal to instruct specifically that "he has the right to every use of it which can be made without interfering with the operation of the road, and to all grass and other vegetation which shall grow thereon," is not error.

6. DEPRECIATION IN VALUE, *Facts Constituting; No Error.* Where the jury, in addition to their general verdict, answered certain special questions put by the company as to the value of the land actually taken, the amount in gross of the damage done by the appropriation to the balance of the farm, and the amount thereof allowed by them on account of certain special matters referred to in the testimony, *held*, that in refusing to submit this further special question to the jury, viz.: "If the land was worth less after than before the right of way was taken, state what facts constituted the depreciation in value, each item separately, and the amount of each," the court did not err, owing to the circumstances of this case, the variety of ways in which the taking of the right of way affected the balance of the farm, and the improbability of all the jurors agreeing as to how much each particular circumstance affected such depreciation.

*Error from Leavenworth District Court.*

TWO actions in the district court, tried upon appeals from the assessment of damages for the right of way appropriated by the *Leavenworth, Topeka & Southwestern Railway Company.* In one action, plaintiff *Paul* recovered a judgment for $3,000 against the defendant company, February 2, 1882; and in the other action, plaintiff *Holman* had judgment for $400 against the company, January 31, 1882. The defendant brings the cases here. The opinion states the facts.

*J. Safford*, and *Stillings & Stillings*, for plaintiff in error.

*Lucien Baker*, for defendants in error.

52 — 28 KAS.

The opinion of the court was delivered by

BREWER, J.: This was an action in the district court of Leavenworth county, tried upon an appeal from the assessment of damages for the right of way appropriated by the plaintiff in error. The commissioners assessed the value of the land taken at $366, and the other damage to defendant in error's farm, by reason of such appropriation, at the sum of $600. From this assessment defendant in error appealed to the district court, and on trial in that court before a jury recovered the sum of $3,000, of which $500 was for the right of way appropriated, and $2,500 for the damage done to the remainder of the farm. From such judgment the railroad company brings error to this court. The errors alleged are in the admission of testimony, the matter of instructions, and in the refusal of the court to submit one question propounded by the company.

I. After several witnesses had testified to the value of the farm, before and after the taking, and had stated upon what grounds they based their opinion as to the diminution of value, two witnesses were called and sworn, who testified that they did not know the market value of the farm, but knew the farm itself, its situation and condition, both before and after the appropriation. They were then asked if they knew what per cent. of difference there was in the value before and after the appropriation. This testimony was objected to, but the objection was overruled and the testimony admitted. This is the only question presented as to the admission of testimony.

II. The plaintiff's testimony was that of himself and of several farmers, eleven in number. The defendant offered the testimony of four real-estate agents, whose valuation of the land taken and of the damages done to the farm was essentially different, and much less than that of the plaintiff's witnesses. Upon this, the court gave this instruction:

"Where a considerable number of witnesses, apparently in-

telligent and reliable, substantially agree in estimating the value of or injury to a particular thing, that is a circumstance proper for the consideration of a jury."

This is objected to as tending to induce the jury to place too great reliance on the number of witnesses presented by the plaintiff.

III. The plaintiff had testified that the strip of land taken ran through his orchard, which prior thereto had been wholly surrounded by a substantial hedge fence, and that by the building of the road two openings were made in this fence at some little distance from his house. In indicating wherein the farm was damaged, both the plaintiff and other witnesses testified that one matter which they took into consideration was the greater facility which was afforded to tramps and thieves for entering this orchard and stealing his fruit. Upon this the company asked this instruction:

"That the opinions of witnesses as to value, based upon the assumption of the probability of tramps or thieves entering the premises of plaintiff and committing the larceny of fruit or other things by reason of the construction of the road, shall not be considered or weighed by them in making up their verdict."

This instruction the court refused to give, and the refusal is alleged as error.

IV. The court gave this instruction:

"If it were reasonable and proper that the plaintiff should construct and maintain a fence on each side of the road, then the cost thereof would be an item to be considered in estimating the damages; and I would suppose that the inconvenience in handling and caring for live stock would be a proper subject for consideration in estimating the damages, but the supreme court of the state, whose decision is binding upon you and me, has decided otherwise, and that excludes it."

The giving of this instruction is also alleged as error.

V. The defendant asked the court to give this instruction:

"That the plaintiff after the condemnation of the strip of land is still the owner of the hundred feet in width, subject to the easement of the railroad company, and has the right

to every use of it which can be made without interfering with the operation of the road, and to all grass and other vegetation which shall grow thereon."

But the court refused to give it, and this refusal is alleged as error.

VI. The defendant asked the court to submit this question to the jury:

"If the land was worth less after than before the appropriation of the right of way, state what facts constituted the depreciation in value, each item separately, and the amount of each."

But the court declined to submit the question, and this is alleged as error. These we think present all the matters which require notice at our hands; and of them in their order.

And first, in reference to the admission of testimony. This matter has embarrassed us not a little. We have great doubts as to whether the testimony was competent. It has already been decided in this court that as a general rule the opinion of a witness as to the amount of damages which the landowner sustains by reason of the establishment of a road across his land is not admissible as evidence. (*Roberts v. The Comm'rs of Brown County*, 21 Kas. 247.) It has also been decided that a witness may testify as to the value of land before the right of way was laid out, and also as to the value of land after it has been appropriated. (*Rld Co. v. Allen*, 24 Kas. 33.) Now this testimony touches both of these propositions. It is almost an expression of the witnesses' opinion as to the amount of damages, and it is but little more than a statement of the difference in values before and after the appropriation. It is a familiar rule of evidence that witnesses are to state facts, and the jury form opinions. So stringent was this rule at one time, that a witness was not permitted to testify as to values. (1 Greenl. on Ev., 13th ed., § 440, p. 494, and cases cited in note 2.) This was upon the theory that values were mere matters of opinion.

By degrees the rule was changed so far as to permit testimony as to values. Some authorities considered it an exception to the rule forbidding the witness to give opinions,

(see Sedgwick on the Measure of Damages, p. 592,) while others regarded values as facts, and testimony as to values simply testimony as to facts. See *Clark v. Baird,* 5 Selden (N. Y.), 183, where many prior cases are reviewed and considered. Doubtless there is something of truth in both of these views. In some cases the question of market value is a mere question of fact. As for instance, in a grain center like Chicago, the market value of any grain is known, and as certain as any ordinary fact. Parties who are engaged in the grain business are as fully and certainly aware of the market value and the changes from day to day therein as of any other fact in business. While on the other hand, the values of real estate, especially in localities where there are few changes in property, are not so absolutely certain, and cannot be determined with absolute exactness; and in respect to them the testimony of witnesses partakes largely of the nature of opinions. And yet from the necessities of the case it has come to be recognized that such testimony is competent. It is the best that, in the nature of things, can be obtained; for a description by a witness of the locality of any given tract, its improvements and surroundings, would ordinarily throw little light upon the question of its value. So many things enter into and affect such value that a witness would be unable to describe them all or even to comprehend them all fully. Hence it has become pretty generally established that a witness who testifies that he is acquainted with the values of real estate in the locality, may give his opinion as to the value of any particular tract. Therefore the great bulk of the testimony, which was offered in this case as to the value of the land before and after the appropriation, was clearly admissible. Now the testimony of these two witnesses was testimony simply as to relative, and not to absolute values. In some cases this would be the only testimony attainable. Take this instance: Suppose trespassing cattle should break down a corn crib and scatter and trample upon the corn; perhaps the only parties who saw the corn crib before and after the trespass might be unacquainted

with the market value, and yet able to state the relative value of the crib of corn, both before and after the injury. Would not such testimony be competent?—leaving to other witnesses, familiar with the market value of uninjured corn, to testify as to that. Only thus could the real extent of the injury be ascertained. Now these witnesses in the case at bar testified that they knew the farm both before and after the appropriation of the right of way; knew its condition, its improvements, the changes made in it by the taking of the right of way, and the effect which the same had upon the farm, and also the relative values of the farm both before and after the injury. With some hesitation we hold that such testimony was competent, or perhaps more correctly that the error, if error it be in its admission, is not under the circumstances of this case such an one as requires a reversal of the judgment. Doubtless such testimony is to be received with caution. It is not strictly the best testimony which the nature of the case admits of. Perhaps in many cases it would afford sufficient ground for setting aside a judgment. But beyond the doubt that exists as to whether such testimony is or is not competent, these further facts appear: Some ten witnesses had previously shown themselves cognizant of the values; had given competent testimony as to such values before and after the taking; and no one of them had testified to a smaller difference in value than did these two witnesses. Further than that, after all the testimony had been received the jury were sent out by the court, and made a personal examination of the farm, and their verdict was less than two-thirds of the lowest valuation of the damage given by any of the plaintiff's witnesses. Putting all these things together, we think we should not be justified in reversing the judgment because of the admission of this testimony. See as supporting the foregoing conclusions the following authorities: *Harrison v. Rld. Co.,* 36 Iowa, 323; *Curtis v. Rld. Co.,* 20 Minn. 28; *Rld. Co. v. Henry,* 79 Ill. 290.

As to the second matter complained of, there can be no doubt that the instruction given by the court is correct as an

abstract proposition. The jury are to be governed by the testimony, and where a considerable number of witnesses, apparently intelligent and reliable, substantially agree, such agreement is certainly a matter entitled to the respectful consideration of the jury. In this very case, some five witnesses were called by the defendant, who substantially agreed, and their agreement was certainly a matter to challenge the attention of the jury. The court did not instruct that the case was to be decided by the mere number of witnesses, as it ought not to; for oftentimes the better knowledge of the few, their greater disinterestedness, freedom from bias, or other reason, may justify or even compel the jury to place more confidence in the testimony of the few than of the many witnesses. On the contrary, the court instructed that the "jury were not bound by the testimony of any one witness or any number of witnesses, but must come to their own conclusions from all the evidence in the case." Perhaps an instruction in this case would have been proper, calling the attention of the jury to the question of the means of knowledge of the witnesses on the two sides. No such instruction was asked, and therefore the court committed no error in not so instructing.

As to the third matter complained of, the jury, in response to a special question, replied that they allowed the plaintiff no damages on account of the liability of his fruit or other property to be stolen. As they did not take that matter into consideration in estimating the damages which they awarded, we think the failure of the court to give the instruction asked was a matter of no moment.

As to the fourth matter, we think that the cost of constructing a fence, if the construction of a fence was reasonable and proper under the circumstances under which the defendant's road ran through the farm, was a proper matter for the consideration of the jury. The plaintiff had testified that he had already constructed a fence all along the line of the right of way, and in view of the manner in which as he states the

road ran through his orchard and other parts of his farm, we think the building of a fence was reasonable and proper.

As to the fifth matter, we remark, that the court had partially instructed the jury upon the questions involved in the instruction refused. It had told them that the fee-simple title remained in the plaintiff, subject to the use by the railroad company for the purposes of its road. Now there was no testimony tending to show how much of this right of way would actually be used by the railroad company. They would have a right to use every foot of it, covering it all with side-tracks or buildings. The extent of their use is a question of fact, and it was unnecessary, in the absence of any testimony, to particularize all the possible uses and advantages which the the plaintiff might retain in the land.

With reference to the last matter, we think it would be difficult for a jury in many cases, among them the case at bar, to give a full, accurate and just answer to such a question. So many different matters combine to cause the depreciation in value, that it would be almost impossible to mention each of them, or that twelve men should agree as to the proportionate degree of each in causing such depreciation. One juror would naturally place more stress upon one cause than another, and while they might all agree that the market value of the farm was diminished a certain amount, yet they might come very far from agreeing as to the proportionate amount which each of the several causes contributed thereto. It would doubtless be proper when any particular matter or matters had been spoken of as tending to cause a depreciation in value, to submit questions as to such matters, and so counsel did; but to require a jury to state every consideration, which in their judgment tended to make the appropriation of the right of way an injury to the farm and the exact amount of the injury attributable to each of such considerations, would in many cases needlessly tend to perplex and embarrass them. Taking the whole case together, we think the judgment must be affirmed. We do this, as already indi-

cated, with some hesitation, in view of the first matter considered; and still we are not prepared to say that there was any such error in the proceedings as would justify us in disturbing the judgment, and it will therefore be affirmed.

The case immediately preceding this, the Leavenworth, Topeka & Southwestern Railway Company v. E. J. Holman, presents the same questions as this, with the exception of the one first named; and for the same reasons, the judgment in that case will be affirmed.

All the Justices concurring.