No. 41,705

J. F. LUECKE and EVA AGNES LUECKE, *Appellees*, v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant*.

(352 P. 2d 454)

Opinion filed May 14, 1960.

*Constance M. Achterberg,* of Salina, argued the cause, and *W. B. Kirkpatrick,* assistant attorney general, and *F. F. Wasinger,* of Hays, were with her on the briefs for the appellant.

*Bernard J. Brungardt,* of Hays, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an eminent domain proceeding commenced by the state highway commission, defendant (appellant), hereinafter referred to as commission, for the purpose of acquiring land for highway purposes. J. F. and Eva Agnes Luecke, plaintiffs (appellees), were the owners of half a section of land described as the northwest quarter and the northeast quarter of section 27, township 13 in Ellis county.

The commission filed its petition in the district court, requesting that the court find the commission had the power of eminent domain and that the property listed in the petition was necessary for high-

way purposes. The petition listed separately the property to be condemned belonging to the plaintiffs as: 10(a) A tract of land for highway right of way in the northwest quarter of section 27, as described, containing 23.67 acres, together with the abutter's right of access to the highway, and 10(b) a tract of land for right of way in the northeast quarter of section 27, as described, containing 6.96 acres, together with the abutter's right of access to the highway. Appraisers were appointed by the court. They filed their report, appraising the property in separate tracts. The report was approved and the plaintiffs, being dissatisfied therewith, filed their notice of appeal from the award, which appeal described the two separate tracts as they had been described in the commission's original petition and set out the separate appraisements for tracts 10(a) and 10(b).

Trial was had in the district court, and the commission, being dissatisfied with the general and the special verdict returned by the jury, appeals to this court from the judgment entered thereon, contending (1) that the trial court erred in instructing the jury and submitting to it for answer special questions which treated the two quarter sections separately, rather than as a contiguous unit of 32 acres; (2) that the trial court erred in permitting one of the plaintiffs' witnesses to testify on direct examination regarding sale prices of specific tracts of land in the immediate vicinity, and (3) that the verdict was excessive.

The facts are as follows: The plaintiffs' property, which had been generally used for farming, was located one mile north of the city of Hays and about one-quarter of a mile from a housing development. The west line of the land was located adjacent to U. S. highway No. 183. The northeast quarter of the land consisted of pasture and 100 acres of farm land, on which the well and the silos were located. The plaintiffs' modern home was located in the southwest corner of the northwest quarter, with shelter belt, new fences and outbuildings thereon. The land appropriated by the commission effected a widening of approximately seventy feet of highway No. 183 adjacent to the northwest quarter on the west and effected the location of interstate highway No. 70 partially across the north half of section 27 at a width of approximately 300 feet, except at the west side, where the highway fanned out to provide an interchange adjacent to the property and connecting interstate highway 70 and highway 183. This resulted in the taking of 23.67

acres from the northwest quarter and 6.96 acres from the northeast quarter. At three points a frontage road with access to the main travelway was placed adjacent to highway No. 183. The land taken for the interstate 70 right of way ran diagonally from the southeast to the northwest across a portion of the northeast quarter and all of the northwest quarter. This divided the northwest quarter into two separate tracts approximately equal in size and permitted access to the northeast quarter by way of an underpass. The record discloses that the northeast quarter was best adapted to farming and the northwest quarter was best adapted to residential development.

Plaintiff Luecke testified that he was on the city planning commission of Hays and the city had only two ways to expand; *i. e.*, to the north and to the east; that the highest and most advantageous use to which his land could be put was for residential development. He testified further that the market value of his land in the northwest quarter was $800 an acre and the market value of the 23.67 acres the commission took from that quarter was $18,136, and that the damage done to the remainder was $49,200. Luecke further testified that he valued the 6.96 acres taken from the northeast quarter at $1,750, and the damage done to the remainder at $9,000.

Mr. Hinkhouse, who was in the real estate and construction business, testified that the value of the land taken in the northwest quarter was $700 to $800 an acre and the value of the seventy acres of land remaining in that quarter north of the proposed highway would not be suitable for development after the highway went through and would be considered as regular farm land worth $300 to $400 an acre; that the land remaining south of the highway in the mentioned quarter would not be decreased in value as a result of the taking. He further testified that the value of the land taken from the northeast quarter was $300 an acre and there would be a diminution in value of the remainder therein.

Mr. Van Doren, on direct examination, testified that he had been in the land development and lumber business and was familiar with land values around Hays and was acquainted with the value of the land in question; that certain portions of the land would be best adapted to residential purposes and other portions to agriculture; that he had purchased land in the vicinity of the property in question for residential and commercial development; that the land taken from the northwest quarter was worth $750 an acre, based

upon the proximity of present development, and that future development would be toward plaintiffs' land; that the seventy acres remaining in the northwest quarter north of highway 70 would be diminished in value from $450 to $550 an acre because of the remote possibility that it could ever be developed as residential property after condemnation. He further testified that the eighteen acres lying south of the highway decreased in value by $100 to $200 an acre and he did not feel there would be any damage to the remaining land lying south of the new interstate highway. He also testified that the value of the land in the northeast quarter would be $200 an acre and inasmuch as it was farm land there was no damage to the remainder of the quarter. The witness was then permitted to testify, over objections of the commission, that in 1956 he had purchased an eighty-acre tract right across the road and south from the property in question for $1,000 an acre; that he had sold one acre of it to a church for $2,000, and that he had sold land right across the corner from the Luecke property to the school board for $1,000 an acre.

The commission called two witnesses who testified as to the market value of plaintiffs' land for farming purposes only. Each testified to the value of the 320 acres as a unit, and placed the value of the 30.63 acres taken in both quarter sections at approximately $277 an acre, or a total of $8,493, and the damage to the remainder of the unit at $8,538. On cross-examination these witnesses admitted they had heard about the sale of one acre to a church for $2,000 and ten acres to the school board for $1,000 an acre, as testified by plaintiffs' witness Mr. Van Doren.

The commission first contends that the trial court erred in instructing the jury and in submitting to it special questions which treated the two quarter sections separately rather than as a contiguous unit of 320 acres.

In condemnation proceedings the owner is to be given, by way of compensation, the fair market value for the land taken, plus the diminution in value of the remainder, based upon a consideration of all the capabilities of the property for its best and most advantageous uses of the property as it was actually situated at the time of taking. The owner is entitled to show the fair market value of his land for every purpose to which it is adaptable, and the fact that the property has been used for one purpose only does not prevent him from showing its availability for other appropriate

uses and its value for such uses. (*Mai v. City of Garden City*, 177 Kan. 179, 277 P. 2d 636; *Hoy v. Kansas Turnpike Authority*, 184 Kan. 70, 78, 334 P. 2d 315; *Board of Park Commissioners v. Fitch*, 184 Kan. 508, 512, 337 P. 2d 1034; *Steck v. City of Wichita*, 179 Kan. 305, 295 P. 2d 1068; *Railway Co. v. Roe*, 77 Kan. 224, 94 Pac. 259.) At the trial plaintiffs' witnesses considered the northwest quarter's most advantageous use to be residential development and placed a value on the land taken and the damage to the remainder accordingly. They testified that the most advantageous use of the northeast quarter was for farming purposes and assessed the damage accordingly. The commission's witnesses considered the most advantageous use of the 320 acres as a unit to be for farming purposes.

The commission condemned the land in two separate tracts. The appraisers valued the land taken, as well as the damage to the remainder, in two separate tracts. In the appeal to the district court from the award, the property was described in two separate tracts. The parties stipulated at the trial that at the date of taking the property was described in two tracts, and the plaintiffs elected to recover their damages for two separate tracts. (*Railway Co. v. Roe*, supra, pp. 226, 227.) The commission cannot now be heard to complain that the property should have been considered as a contiguous unit. Under the facts and circumstances of the instant case we are of the opinion that the commission was not prejudiced by the court's submission to the jury of the question of damages to two separate tracts in accordance with the condemnation proceedings, and we are cited no authority which holds that where land is condemned and appraised in separate tracts, even though they are contiguous, the tracts must, at the election of the condemner on appeal from the separate awards, be treated as a unit.

The commission next contends the court erred in permitting plaintiffs' witness Van Doren to testify on direct examination, over its objection, regarding the sale price of two specific tracts of land in the immediate vicinity.

It is the rule in this state that on direct examination testimony pertaining to the purchase price of a specific tract of neighboring land, the circumstances not being shown, is not a proper method to prove the market value of the land subject to condemnation. In condemnation proceedings, opinions as to the value of property should be confined to the property in question, unless on cross-ex-

amination, for the purpose of testing the knowledge and competency of the witness, the value of adjoining property is inquired into. (*C. K. & N. Rly. Co. v. Stewart,* 47 Kan. 704, 707, 28 Pac. 1017; *Railway Co. v. Weidenmann,* 77 Kan. 300, 304, 94 Pac. 146; *Yagel v. Kansas Gas & Electric Co.,* 131 Kan. 267, 291 Pac. 768; *Cline v. Kansas Gas & Electric Company,* 182 Kan. 155, 158, 318 P. 2d 1000.)

Assuming there was error in admitting the testimony complained of, was it prejudicial error? After the witness Van Doren, on direct examination, had qualified as an expert in land values around Hays, as well as in the value of plaintiffs' land, as heretofore related, he then was asked about the sale of other land in the immediate vicinity. Plaintiff Luecke and another witness testified that the value of the condemned land in the northwest quarter was $700 to $800 an acre, as did Van Doren. On cross-examination the commission's witnesses testified they had knowledge of the sale of other lands in the vicinity as testified to by Van Doren.

The record clearly establishes that the jury was not confused or misled by the admission of the objectionable evidence, especially in view of the award made by it. It found the value of the land taken from the northwest quarter to be $400 an acre and the diminution in value of the remainder at a rate of $146 an acre; that the land taken from the northeast quarter was worth $200 an acre and the diminution in value of the remainder at the rate of $6.50 an acre. It is clear that no prejudicial error was committed by the trial court. Therefore, we are of the opinion that the admission of Van Doren's objectionable testimony did not amount to prejudicial error. It is apparent from an examination of the entire record that the alleged errors are at most technical ones and do not affirmatively appear to have prejudicially affected the substantial rights of the commission, and in this jurisdiction such errors are not grounds for reversal of a judgment. (G. S. 1949, 60-3317 and cases cited thereunder; *Alexander v. Wehkamp,* 171 Kan. 285, 232 P. 2d 440.)

The commission further contends that the verdict was excessive. This contention is without merit. As stated, an examination of the record reveals that the judgment was well within the evidence presented.

No prejudicial error having been made to affirmatively appear, the judgment of the trial court is affirmed.

It is so ordered.