No. 47,594

STATE OF KANSAS, *Appellee,* v. RICK STEGER and LENNY CLAYBORNE, *Appellants.*

(532 P. 2d 1115)

Opinion filed March 1, 1975.

*Robert C. Littrell,* of Manhattan, argued the cause, and *John C. Fay,* of Manhattan, was with him on the brief for the appellants.

*Paul E. Miller,* County Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendants (Rick Steger and Lenny Clayborne) were each charged with two counts of having sold marijuana contrary to K. S. A. 65-2502. In a consolidated trial to a jury each defendant was found guilty on both counts and this appeal ensued.

The sales of marijuana in question were made by defendants to Rick Roan, a narcotic agent employed by the attorney general. Roan was the state's only witness. He testified that he had become a close friend of both defendants and their families and on numerous occasions smoked marijuana and drank wine with them. He further testified that the sales from which the charges against defendants arose were made at his request. Roan's credibility was put in issue on his cross-examination and by the testimony of numerous witnesses called by defendants. Defendants called seventeen witnesses, thirteen of whom testified as to matters concerning Roan's character and conduct. The witnesses for the defense were college and high school students and military personnel stationed at Fort Riley. Their testimony was that they had seen Roan smoke and drink wine with defendants on many occasions; that Roan had injected himself with "junk", presumably "heroin"; that he had been seen to inject "speed" into the arm of a friend of the witnesses; that he had been seen, in a public place, to make improper ad-

vances to a waitress; and that he had corrupted a minor girl by giving her various drugs, keeping her possessions in his apartment where she stayed with him on several occasions.

The state was permitted, over objection, to bolster or attempt to rehabilitate Roan's credibility by introducing evidence through his re-direct testimony pertaining to many unrelated drug sale convictions which had been secured, according to Roan, by his efforts as an undercover agent working on the cases.

It appears, from the record, that defendants at trial relied on entrapment as a defense claiming that they had been entrapped by Roan into making the sales. The entrapment issue was submitted to the jury as a question of fact and determined adversely to defendants. However, defendants make no point on appeal in this regard.

Defendants brief and argue two points on appeal. They first claim reversible error concerning a statement made by the county attorney in his closing argument. The county attorney's statement complained of was precipitated by a remark made by defendants' counsel who, in his argument, stated to the jury:

"Where's Rick Roan? He hasn't been here following the first day. He testified and split. Why wasn't he here to refute some of these things?"

In his argument the county attorney stated:

"Rick Roan left immediately after he testified Wednesday because his life had been threatened."

Defendant's counsel lodged an objection and asked for a mistrial. Defendant's motion for a mistrial was overruled, but the jury was admonished to disregard the county attorney's statement. Nevertheless, defendants claim reversible error since the county attorney's statement was unsupported by any evidence and was a declaration implying that defendants were ready to commit murder to silence the witness. Defendants claim the comment was so inflammatory and prejudicial that it could not be cured by the court's admonition to the jury. Similar questions have repeatedly been presented to this court in criminal appeals. In the recent case of *State v. Murrell*, 215 Kan. 10, 523 P. 2d 348, the principal witness for the prosecution was Glenn Edward Burnett, who had previously entered a plea of guilty as a participant in the crime for which Murrell was on trial. Concerning Burnett's testimony, the county attorney in final argument commented that "Mr. Burnett's life is in a great deal of jeopardy being in a penal [institution]—" On objection the county attorney withdrew the remark and the jury was admonished by the

court. We held the trial court did not err in refusing to grant a new trial on the basis of this misconduct and pointed out what has so often been said in such cases that the trial judge was in a far better position to assess the impact of the prosecuting attorney's conduct on the jury than the members of this court.

The remark of defendants' counsel concerning the absence of Roan, who had been seated at the counsel table with the county attorney during the course of the trial, prompted the response by the county attorney. The response of the county attorney must be considered improper since there was no scintilla of evidence indicating a threat to Roan's life during the course of the trial. Although the point raised by defendants, standing alone, would not justify the granting of a new trial, we deem it deserving of cumulative effort in our disposition of the appeal.

Before leaving this point, we further note that on the hearing of defendants' motion for a new trial, the trial court called in a number of jurors for interrogation on the issue whether they were prejudiced by the county attorney's statement. Such procedure is proscribed by K. S. A. 60-441 which reads:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him to assent or to dissent from the verdict of indictment or concerning the mental processes by which it was determined."

The statute is a restatement of the case law in this state to the effect that the mental process of a juror in reaching a verdict or factors which influence his mental process cannot be inquired into for the purpose of impeaching a verdict. (*State v. Schroeder,* 201 Kan. 811, 443 P. 2d 284; *Kincaid v. Wade,* 196 Kan. 174, 410 P. 2d 333; and *Anderson v. Thompson,* 137 Kan. 754, 22 P. 2d 438.) While the proceedings referred to are forbidden by statute and case law, the matter is of no significance herein since the verdict was not impeached.

In their second point on appeal defendants claim error in the trial court's admission of Roan's testimony concerning his success in securing convictions in unrelated drug cases. Defendants say such evidence was irrelevant and inflammatory. The record discloses that defendants' counsel interposed numerous objections to this entire line of questioning contending that it was beyond the scope of cross-examination; that it was immaterial; and that it was highly inflammatory and prejudicial.

From the testimony of the numerous witnesses of defendants it may fairly be said that the moral character of Roan had been impeached. The question then posed is whether the admission, over objection, of his testimony of a favorable "batting average" with respect to arrests and convictions pertaining to previous unrelated buys amounted to reversible error. Defendants argue the admission of "batting average" testimony is proscribed by statute (K. S. A. 60-420 and 60-422 [d]). For the purpose of impairing or supporting the credibility of a witness 60-420 gives broad authorization for the introduction of extrinsic evidence concerning any conduct by the witness and any other matter relevant upon the issues of credibility. However, the provisions of 60-420 are made subject to 60-422, which further limits the admissibility of evidence affecting credibility. Subsection (d) of 60-422 provides:

". . . (d) evidence of *specific instances* of his conduct relevant only as tending to prove a trait of his character, shall be inadmissible." (Emphasis supplied.)

In his challenged testimony, Road named the cities in which he had worked; the number of drug buys he had made; the number of warrants issued as a result of those buys; and finally the number of convictions resulting from the arrests. Such testimony must be considered evidence of specific instances of conduct and at most could only tend to prove a character trait of reliability, rather than tending to establish honesty and veracity. In Vol. 4 Vernon's Kansas Statutes Annotated Code of Civil Procedure [by Fowks-Harvey and Thomas], § 60-422 the authors' note reads:

"Rule 422 (d) provides that specific instances of conduct may not be used to prove a trait of character for purposes of supporting or attacking credibility." (p. 290.)

While not mentioning the statutes referred to, this court in two recent cases has expressed disapproval of the admission of past exploits in order to enhance the credibility of an undercover agent as a state witness. In *State v. Davis*, 213 Kan. 54, 515 P. 2d 802, the testimony of one Phillips, an informant or undercover agent for the state, was spoken of in this manner:

"Defendant's conviction was based on the testimony of Phillips. He testified he purchased heroin from defendant on the dates charged in the information. Over objection, he also testified to the purchase of heroin on two prior occasions. The reliability of Phillips' testimony cannot be predicated on how many purchases he made. The credibility given his testimony as to purchases charged in the information cannot be enhanced by his testimony as to prior purchases. . . ." (p. 59.)

In *State v. Culbertson,* 214 Kan. 884, 522 P. 2d 391, the state's case against defendant for possession of marijuana with intent to sell was based upon the testimony of Payne, an undercover agent. Another state's witness, undersheriff Heinrichs when asked about Payne's work, testified:

" '. . . Mr. Payne while working for this office was working on several cases, of which we have had conviction.' . . ." (p. 885.)

On objection by defendant, the trial court immediately admonished the jury to disregard Heinrichs's testimony. This court noted that Heinrichs's testimony to the effect that others had believed Payne's testimony at other trials was hearsay, which may have bolstered Payne's credibility, but that the court's prompt admonition to the jury cured any error.

In the case at bar, defendants' repeated objections to Roan's testimony concerning his past successes as an undercover agent were overruled, thus, in the eyes of the jury Roan's testimony was stamped with approval by the trial court. Road was the state's sole witness. As we have indicated, the issue at trial was entrapment, the determination of which hinged on whether the jury believed Roan or defendants' witnesses who testified pertaining to the question. Under these circumstances, we are unable to say the admission of the challenged testimony was harmless error.

This is not to say that a witness whose impeachment is sought by proof of general bad character cannot be supported by testimony otherwise admissible, tending to establish honesty and veracity. In *Hodges v. State Highway Commission,* 198 Kan. 80, 422 P. 2d 570, this court spoke of the subject in this fashion:

". . . Generally speaking, testimony is admissible to sustain a witness whose credibility has been challenged (4 Jones on Evidence, 5th ed., [1958], § 957). In section 962 of this treatise the rule is amplified to make permissible such rehabilitative testimony upon reexamination even though inadmissible upon direct examination, as follows:

" 'If cross-examination has disclosed facts which tend to impeach the integrity or character of the witness, he may, on reexamination, make explanations showing that the facts are consistent with his credibility as a witness, although the testimony would otherwise be irrelevant.' (p. 1810)" (p. 83.)

While Roan's testimony might show his expertise as an undercover agent, it is totally irrelevant as tending to establish his veracity as a witness. The state argues that the challenged testimony was at most irrelevant and its admission could not have prejudiced defendants in any way. We cannot agree. Roan was the state's only

witness; it was solely his testimony that the state relied upon to rebut defendants' claim of entrapment. Under such circumstances, we are unable to say that defendants were not prejudiced.

In view of the foregoing the judgment is reversed and the cause remanded with directions to grant a new trial.

FATZER, C. J., and Schroeder and Fontron, JJ., dissenting.